## JAY et al. v. UNITED STATES.

Circuit Court of Appeals, Tenth Circuit.
October 14, 1929.

Rehearing Denied November 20, 1929.

No. 90.

M. M. Thomas and J. B. Dudley, both of Oklahoma City, Okl. (Claude Nowlin and J. R. Spielman, both of Oklahoma City, Okl., on the brief), for appellants.

Roy St. Lewis, U. S. Atty., of Oklahoma City, Okl. (Herbert K. Hyde, Asst. U. S. Atty., of Oklahoma City, Okl., on the brief), for the United States.

Before PHILLIPS and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge. The indictment in the instant case contains seven counts. The first count charges John Jay, Allie Jay, Ray Cook and Don McBee with a continuing conspiracy, from February 1, 1925, to January 18, 1928, to violate the Harrison Anti-Narcotic Act by unlawfully and feloniously purchasing, selling, dispensing and distributing morphine not in or from the original stamped package. The fifth, sixth and seventh counts charge such defendants with the sales of morphine, not in or from the original stamped package, to Allen Martin, in the Western District of Oklahoma, on March 13, 1927, April 12, 1927, and April 20, 1927, respectively.

The conspiracy count charged, as the first overt act, that, on February 1, 1925, John Jay had possession of morphine in Oklahoma County, Oklahoma. It charged, as the seventh overt act, that, on January 7, 1927, Ray Cook and May Cook sold and delivered four ounces of morphine to O. J. Blair and Georgia Blair in Oklahoma County, Oklahoma. It charged, as the eighth, ninth and tenth overt acts, the substantive offenses charged in counts five, six and seven. The Court withdrew from the jury overt acts two, three, four, five and six of the conspiracy count. The jury found May Cook not guilty. It found John Jay, Allie Jay and Ray Cook guilty on counts one, five, six and seven. Don McBee pleaded guilty and testified in behalf of the government.

Sentences were imposed on John Jay, Allie Jay and Ray Cook and they have appealed.

The testimony on the part of the government showed the following: That in January, 1925, R. C. Harold saw John Jay and Allie Jay in Florida and made arrangements with John Jay to transport a trunk, containing a large quantity of morphine, from Florida to Oklahoma for the latter; that pursuant to such arrangement, Harold received such trunk from a third party in the month of February, 1925, and transported it by means of an automobile to Oklahoma City, where he delivered it to John Jay at the Lawrence Hotel, and received approximately $800 for transporting it; that, on January 7, 1927, on a rural road near Oklahoma City, May Cook sold and delivered four ounces of morphine to O. J. Blair and Georgia Blair and received therefor $180 in cash; that, on March 10, 1927, Allen Martin, a witness for the government, went to John Jay's home in

Oklahoma City and there made an unsuccessful attempt to purchase morphine from Mrs. Jay; that he went back on March 11th and again talked with Mrs. Jay; that she asked him where he was from, told him she knew nothing about morphine, but would tell John Jay and instructed Martin to come back later; that, on March 12th, Martin went back and met John Jay; that Mrs. Jay was present and John Jay made some inquiries concerning what narcotic dealers Martin knew and, upon receiving satisfactory answers, John Jay agreed to make a sale; that John Jay took Martin's address at Guthrie, Oklahoma, and agreed to send a messenger the next day to receive the money; that the next day Don McBee came to Martin's address at Guthrie and received $300 from him; that later McBee delivered to Martin the morphine described in count five; that McBee received the morphine from John Jay and Ray Cook and that he delivered the money to John Jay; that, on April 12, 1927, Martin made arrangements to purchase six ounces of morphine by two telephone conversations, one with John Jay and one with Allie Jay; that John Jay and Ray Cook delivered the morphine to McBee, who delivered it to Martin and received $300 in cash; that McBee paid the money to Mrs. Jay; that, on or about April 20, 1927, Martin made arrangements for another purchase by a telephone conversation with Allie Jay; that Allie Jay and May Cook delivered the morphine to McBee, who, in turn, delivered it to Martin and received the cash therefor.

Martin and McBee corroborated each other. Martin and McBee were also corroborated by the officers who listened to the telephone conversations and who received the morphine immediately after it was delivered to Martin, and who arrested McBee with the marked money paid for the last purchase.

The Court instructed the jury to consider the evidence of the transaction in 1925 between Harold and John Jay only against John Jay and Allie Jay, and only with reference to the conspiracy counts. The Court also instructed the jury to consider the evidence of the transaction in January, 1927, between May Cook and the Blairs, only with reference to the conspiracy counts.

■ Counsel for the defendants contend that the Court erred in admitting, over their objection, testimony concerning the trunk transaction and the sale to the Blairs, on the ground that such transactions took place prior to the formation of the alleged conspiracy and were independent and isolated transactions which had no bearing on the crimes charged in the indictment. We think this contention is well taken. The proof did not establish a conspiracy prior to March, 1927. The evidence was prejudicial and the conviction upon the conspiracy counts must be set aside. However, as this evidence was introduced and considered only in support of the conspiracy counts, it does not in any wise vitiate the convictions upon the fifth, sixth and seventh counts.

■ Counsel for the defendants also contend that the Court erred in overruling their motions for directed verdict of not guilty as to John Jay, Allie Jay and Ray Cook upon counts five, six and seven of the Indictment. The evidence clearly established that Ray Cook aided and abetted John Jay in the commission of the offenses charged in the fifth and sixth counts, and Allie Jay in the commission of the offense charged in the seventh count. The evidence established that John Jay committed the offenses charged in the fifth and sixth counts, and it established that Allie Jay committed the offense charged in the seventh count.

The Court sentenced Ray Cook to imprisonment for a term of five years on each of counts five, six and seven, to run concurrently. The Court sentenced Allie Jay to imprisonment for a term of two years upon each of counts five, six and seven, to run concurrently. The Court sentenced John Jay to imprisonment for a term of five years on each of counts five, six and seven, the sentence upon the seventh count to run concurrently with the sentence upon the fifth count.

Therefore, assuming the evidence did not establish the charge against Allie Jay on counts five and six and against John Jay on count seven, because of the sentences imposed there was no prejudice in overruling their motions for directed verdict of not guilty.

■ When the jury first returned into court with its verdict, it had confused the substantive offenses charged in counts five, six and seven with the same offenses charged as overt acts numbered eight, nine and ten in the conspiracy count, so that the jury struck out of the verdict the words "fifth," "sixth" and "seventh" and inserted in lieu thereof the words "eighth," "ninth" and "tenth." As the Indictment did not contain any eighth, ninth and tenth counts, the verdict was obviously irregular and informal and under proper instructions the jury was permitted to retire and correct its verdict so as to read "fifth," "sixth" and "seventh" counts instead of "eighth," "ninth" and "tenth" counts. The first verdict returned had not been recorded when the error was discovered and the

jury instructed to again retire to correct its verdict. Counsel for the defendants contend that the Court erred in permitting the jury to retire and amend the original verdict. It is well settled that, where a verdict is informal or irregular, the Court may direct the jury, under proper instructions, to retire and bring in an amended or corrected verdict. Pehlman v. State, 115 Ind. 131, 17 N. E. 270; Evans v. State, 68 Fla. 79, 66 So. 421; State v. Gonneion, 68 N. J. Law, 429, 53 A. 701; State v. Harris, 39 La. Ann. 1105, 3 So. 344; State v. Carrithers, 79 Kan. 401, 99 P. 614; 16 C. J. 1114, § 2609.

The judgment on the first count is reversed with instructions to grant the defendants a new trial, and the judgments on the fifth, sixth and seventh counts are affirmed.